UNITED STATES of America upon the relation and for the use of the TENNESSEE VALLEY AUTHORITY, Plaintiff,

v.

Stella McCOY et al., Defendants.

Civ. A. No. 759.

United States District Court
W. D. North Carolina,
Asheville Division.

Oct. 25, 1961.

Charles J. McCarthy, Gen. Counsel, Thomas A. Pedersen, Asst. Gen. Counsel, James H. Eldridge, Herbert S. Sanger, Jr., Knoxville, Tenn., for plaintiff.

Herbert L. Hyde, Asheville, N. C., for defendant, Stella McCoy.

WARLICK, Chief Judge.

This cause is again before the Court on a motion filed by the defendant Stella McCoy, under Rule 60(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., seeking relief from the final judgment entered by this Court on September 2, 1960, which dismissed defendant's exceptions to the Commission's award, confirmed the award of the Commission and the report of the Special Master, and confirmed the vesting of title in the United States of America as to the minerals and mining rights which were taken by the United States by the filing of the declaration of taking on June 16, 1947.

The grounds of the motion are: (1) that the judgment is void because the Court was without jurisdiction and failed to make findings of fact, and (2) that the judgment was erroneously entered for a number of reasons relating primarily to the hearing and award of the Commission.

From a review of the complete file, the following facts and conclusions are made.

This action was commenced by the filing of a petition and a declaration of taking on June 16, 1947, to acquire certain rights in land required in connection with the Tennessee Valley Authority's Fontana project in Swain County, North Carolina, in the Western District. The rights taken include the fee simple title to an undivided ½ interest in the *minerals and mining rights* in 210 tracts containing approximately 3,900 acres; the fee simple title to an undivided $^{35}/_{72}$ interest in the *minerals and mining rights* in one tract containing 33.6 acres; and the fee simple title to the *minerals and mining rights* in one tract containing 32.9 acres. Plaintiff had previously acquired a fee simple title to the surface rights and the other undivided interests in the *minerals and mining rights* in these tracts.

At the time of the commencement of this proceeding, there were 73 known defendants who had or claimed to have some interest in the minerals and mining rights. Other persons who might have an interest were joined as "Unknown Parties in Interest."

Answers for many of the known defendants were filed through their attorneys. Answers for the minors, those non-compos mentis, and those in military service were filed by the duly appointed guardian ad litem and military service attorney. On September 8, 1947, a verified answer was filed by defendant, Stella McCoy. The copy of this answer which was received by plaintiff from the clerk's office shows that it was filed by D. F. Giles, an attorney of Marion, North Carolina, however it does not show the verification of Stella McCoy, though the original answer on file in the Clerk's office

shows such verification but fails to carry the name of Mr. Giles, who incidentally was a very reputable attorney.

On September 30, 1947, a Special Master was appointed by Judge E. Y. Webb, then United States District Judge for the Western District of North Carolina, to determine the ownership of the property involved in the case. On July 6, 1951, the Special Master filed his report showing that a large number of persons not originally named as defendants in the action had an interest in the *minerals and mining rights*. To expedite the disposition of the case, plaintiff filed a motion, supported by the affidavit of James H. Eldridge, to proceed under the federal rule governing the condemnation of property in effect prior to August 1, 1951, which was allowed.

In the preparation of this motion plaintiff learned for the first time of the death of Mr. Giles and thereupon on February 28, 1952 mailed a copy of the motion and the supporting affidavit to the defendant, Stella McCoy, informing her by letter that such notice was being given her in view of Mr. Giles' death, and also forwarded a copy of said motion to Wm. L. McCoy, an attorney of Franklin, North Carolina, and a first cousin of the defendant Stella McCoy,—for that in this same proceeding Wm. L. McCoy, in addition to having a personal interest in the properties involved, represented the estates of D. McCoy, the late James A. McCoy and Angeline McCoy, widow of James McCoy. On March 1, 1952 Wm. L. McCoy acknowledged receipt of said motion, indicating in his letter that he gave his consent and approval as "Administrator of three estates and as counsel for Stella McCoy."

On March 6, 1952, Beverly S. Burbage, Berlen C. Moneymaker and James H. Eldridge, attorneys for the TVA, went to Franklin, in Macon County, North Carolina, where the defendant Stella McCoy resided, and met with her and her cousin Wm. L. McCoy in the latter's law office and there in the presence of the defendant Stella McCoy the proposed order as set out above was signed by Wm. L. Mc-Coy as "Attorney for Stella McCoy and as Administrator of the estate of D. McCoy, the estate of James A. McCoy and the estate of Angeline McCoy." And in this same meeting Stella McCoy stated that Wm. L. McCoy represented her as her attorney.

This finding of fact is made and based on the affidavits of the three attorneys, Moneymaker, Burbage and Eldridge.

On April 25, 1952 Joseph C. Swidler, General Counsel of the TVA, wrote every attorney listed as counsel of record in this case, including Wm. L. McCoy, that he had received a letter from Honorable O. M. Mull, Chairman of the Commission, in effect that the Commission would meet at 10:30 a. m. on June 3, 1952, in the United States District Court Room in Asheville, North Carolina, for the purpose of conducting a hearing looking toward a determination of the value of the minerals and mining rights sought to be condemned,—all as set out in Title 16, Chapter 12A, § 831x, of the United States Code Annotated. On April 29, 1952 Wm. L. McCoy wrote Mr. Swidler of the receipt of said letter and indicated, among other things, as follows: "Yes, I still represent Stella McCoy in her interest," and that he would undertake, though finding himself very sick, "to be present, or failing, would get some good lawyer to assist me in my interest as well as Stella's". The suggested date of June 3 was found acceptable to all parties in interest and on May 6, 1952, a letter confirming June 3, 1952 as the date of the hearing was sent by Mr. Swidler to Mr. Mull, Chairman of the Commission to the other two Commissioners, and to all attorneys of record, including Wm. L. Mc-Coy.

The hearing as set came on before the Commission at the time agreed. The Chairman, Mr. Mull and the other two commissioners, Mr. James K. Cowan and Mr. Ray Morgan were present, and the proceeding was reported by Miss Grace Williams, a court reporter of Johnson City, Tennessee, who used as the basis for her reporting a Sound-Scriber machine. During the hearing the Chairman

requested that the court reporter copy into the record the letter of May 6, in which all counsel were notified of the hearing together with any other letters which had to do with showing that the defendants and their attorneys had notice of the meeting of the Commission, since none of the defendants appeared either personally or by attorney.

As such hearing plaintiff offered the testimony of seven witnesses all found to be qualified geologists and mining engineers each of whom testified that he had thoroughly inspected each of the tracts involved in this controversy and that none of the property contained any minerals of commercial value and in the opinion of each the mineral rights taken had no market value as of June 16, 1947.

Among those testifying was James W. Alexander, a mining engineer and former superintendent of the Fontana Copper Mine who had spent more than twenty six years in the Fontana area; W. W. Simmons, Chief Geologist for the Tennessee Copper Company, and Dr. Fredrick C. Kruger, who at the time of the hearing before the Commission was a Professor at the University of Tennessee.

Following the hearing and on June 12, 1952, the three Commissioners made their report and found among other things, from the evidence offered, that the minerals and mining rights had no commercial market value on June 16, 1947, the date of the taking.

Thereafter and on June 27, 1952, Wm. L. McCoy as administrator of the estates of D. McCoy, James A. McCoy and Angeline Miller McCoy, filed exceptions to the findings of the Commission. However, nothing seems to have been done by him during his lifetime and in so far as this record discloses no act or deed was taken by him or anyone representing him or those whom he represented to perfect his appeal and presumably such has long since been abandoned.

On June 30, 1952 Stella McCoy filed in the office of the Clerk of the United States District Court the paperwriting which she styles as "Affidavit and Motion and Notice of Appeal" which seems to have been verified on the 27th day of June 1952, before a Notary Public.

"Miss Stella McCoy, first being duly sworn, deposes and says:

"That she is one of the respondents in the above entitled case and lives in Macon County, State of North Carolina;

"That a hearing was held at 10:30 a. m. on June 3, 1952, in the Federal Court Room at Asheville, North Carolina, to examine into and determine the value of the mineral and mining right condemned in the property described in this proceeding;

"That said commissioner found and reported that the said mineral and mining rights condemned herein had no commercial or market value and therefore awarded nothing to the respondent for the mineral and mining rights condemned in this cause;

"That said finding is not correct and that said mineral and mining rights condemned herein had a commercial and market value;

"That this affiant had not been previously notified of the time and place of the hearing and was not represented at the hearing;

"That this affiant, because of not being properly notified of said hearing and represented at said hearing, hereby moves that said finding be set aside and said case re-opened upon appeal to the U. S. District Court and said District Court notify this affiant of the appointed time and place of said hearing so she might be properly represented at said hearing.

"Further deponent sayeth not at this time.

"(s)    Stella McCoy
       "Affiant"

On September 11, 1952 Mr. Joseph C. Swidler, General Counsel for plaintiff wrote the undersigned Judge of the United States District Court of the events that had transpired, and setting out

therein that certain paperwritings had been filed by Wm. L. McCoy in his several capacities and by Stella McCoy, and acquainting the court with the fact that Miss Grace Williams had advised that she could have the record written and ready for delivery by October 15 and further requesting that defendant's exceptions be heard at a time convenient to the court. This letter was acknowledged and the hearing awaited pending the docketing of said appeal.

Nothing seems thereafter to have been done as is disclosed by the record until on September 30, 1955, the defendant Stella McCoy filed a paperwriting with the Clerk in which she seeks the right "to enter in and upon the lands for the purpose of investigating the fair market value of certain minerals and in order to properly prepare her case and present the same to a three judge court." On October 10, 1955 the Clerk was advised by Mr. Swidler that the plaintiff had no objection to her going upon the property and removing samples of the minerals, etc. That she had previously, on September 20, 1956, been given such permission on her request, however she was advised that practically all of the lands which had previously been acquired for the purpose of building the Fontana Reservoir had been transferred by proper conveyance to the National Parks Service or to the Forest Service and only that land had been retained which was located south of the Fontana Reservoir.

The next step taken by the defendant Stella McCoy in this long proceeding seems to be a notice of motion filed with the Clerk on June 1, 1957, dated the 16th of May 1957, signed by Guy Weaver, Esq., a reputable attorney of the Buncombe County Bar, in which he sought an order as her attorney to make certain inspections of the land.

On May 31, 1957 plaintiff served upon said Guy Weaver and Wm. L. McCoy, as attorneys for Stella McCoy, a notice of motion to the effect that plaintiff will bring the attached motion on for a hearing before the United States District Court in the Federal Building in Asheville on the opening day of the June 1957 term, said motion being to the effect that plaintiff would seek a confirmation of the report of the Special Master filed on July 6, 1951 and would likewise seek to confirm the report and award of the Commissioners filed on June 12, 1952, and to dismiss the exceptions to the Report and to the Award of Commissioners filed on June 27, 1952, by Wm. L. McCoy in his various capacities and the exceptions filed on June 30, 1952 by the defendant Stella McCoy,—on the ground that Wm. L. McCoy as administrator of the estates and the defendant Stella McCoy each had been guilty of laches and had failed to prosecute with due diligence their rights under the Commission's award and that each had permitted the exceptions to remain filed for approximately five years without any effort to secure and file with the court a transcript of the testimony taken before the Commission and for any other rights as might come from the motion.

The above motion came before me in Asheville on June 11, at which time the defendant was represented by Guy Weaver, Esq., and T. A. Uzzell, Jr., former United States District Attorney for this District. Following such hearing in Chambers and on June 19, 1957, I addressed a letter to Mr. Weaver and Mr. Uzzell, as attorneys for the defendant and Mr. Swidler, General Counsel for the plaintiff, in which I asked of them certain questions, one of them being, "Is a three judge court necessary?" together with other inquiries, and offered suggestions.

Thereafter on June 20, 1957, Mr. Uzzell wrote to me at length and among other things stated, "Judge Weaver and I would, of course, waive the provision for the three judges so that the matter could be determined by a single judge". Some days later counsel for plaintiff agreed that a three judge court was unnecessary and that they would stipulate that the exceptions may be heard by a lesser number of judges and would waive such statutory right.

On October 4, 1957, and for the first time, the defendant Stella McCoy wrote Miss Grace Williams, the official reporter at the hearing of the Commission, requesting information about transcribing the testimony taken before the Commission at the hearing on June 3, 1952, for the purpose of furthering her appeal from the award of June 12, 1952. Miss Williams then informed the defendant and her counsel, Mr. Weaver and Mr. Uzzell, as well as counsel for plaintiff, that during the early part of 1957, in moving her office, she had destroyed the record made at said hearing since it was more than five years old and was thought to be of little value. At the same time she destroyed many other records of a similar age.

Thereafter on October 31, 1957, plaintiff filed a motion similar to the motion heretofore filed on May 31, 1957, and seeking in part the same relief as shown in the original motion. However this motion likewise refers to the death of Wm. L. McCoy, his failure to proceed during his lifetime; that a successor administrator had not been appointed and setting out very explicitly that a retrial of this cause at this late date would be highly prejudicial both from a monetary standpoint and the subsequent death of one very important witness and the removal of others who testified at the hearing on June 3, 1952, to distant parts of the world.

This cause was set for hearing at the opening date of the regular November 1957 term of this court. In the meantime it would appear that counsel for defendant had either withdrawn from their appearances or had ceased to represent defendant, in that it appears that nothing was done and the matter seems to have remained dormant until sometime during the summer of 1960, and at the instance and suggestions of the Clerk of this court notice was given to all parties in interest that a hearing would be held on August 24, 1960, on the above motion so that this matter could be concluded. (This order on the part of the court came about in part at least through the fact that the Administrative Office had become insistent on the disposition of older pending cases in the United States Courts).

On said date of August 24, 1960, a hearing was held on the motion of October 31, 1957, at Asheville, at which hearing the defendant Stella McCoy was present. She was not represented by counsel.

The motion was granted and judgment to that effect was entered on September 2, 1960.

On the date preceding the hearing on August 24 the defendant Stella McCoy filed with the Clerk a paperwriting entitled "Amendment to Affidavit and Motion and Notice of Appeal", which is self explanatory. It will be noted that this paperwriting has written in ink the date of August 23, 1960, but it is to be noted that the paper evidently was typewritten prior to the ——— day of October 1955 as that date appears hereon. Subsequently the motion to set aside the judgment and notice of exceptions and appeal were filed by the defendant on September 30, 1960. Bond in the sum of $250 as required was filed and approved on October 4, 1960. On November 7, 1960 at the request of the defendant Stella McCoy an additional extension of time of forty days in which to docket the appeal in the Court of Appeals was granted by the Court and was to run to and including the 19th of December, 1960. Subsequently on the 17th of December, 1960, a further extension of eleven days up to and including December 30, 1960, was granted on the request of the defendant, so as to give her additional time in which to docket the appeal in the Court of Appeals.

Nothing seems to have been done and the Appeal was not perfected.

On May 5, 1961, the defendant filed a petition asking that the judgment be set aside and vacated on the grounds that she was not given prior notice of and was not represented at the Commissioner's hearing in June, 1952, and that at the hearing on the plaintiff's motion on August 24, 1960 she was not represented by counsel.

On July 3, 1961 the defendant, now once more represented by an attorney, filed an amendment to her petition of May 5, 1961, again praying that the judgment of September 2, 1960 be set aside, with the additional grounds that (1) that the defendant was entitled by 16 U.S.C.A. § 831x to have her exceptions heard by a three-judge district court, and that this court was without the power to dismiss them; (2) that the judgment entered on September 2, 1960 was not in accordance with Rules 52(a) and 41(b) of the Federal Rules of Civil Procedure, in that no findings of fact were made by this court; and (3) that the Commissioners had not made a report setting forth a separate award and valuation with respect to each parcel of land involved as required by 16 U.S.C.A. § 831x.

All of this came on for hearing on July 17, 1961, when a full hearing was had and the cause thoroughly explored.

■■■ Taking up the defendant's claims as set out in her original petition of May 5, 1961, and as subsequently amended on July 3, 1961, I find as a fact (1) that the defendant was given ample notice of a hearing before the Commission on June 3, 1952, and (2) that she in addition to having personal notice thereof was represented by Wm. L. McCoy as counsel of her own choosing, (3) that though she was entitled originally under Title 16, Chapter 12A, § 831x, to have any exceptions filed by her heard before three Federal judges, that her then counsel of record stipulated as is provided, that the matter may be heard before a lesser number of judges and that it could be determined by a single judge, (4) that ample facts were found by the court and that Rules 52(a) and 41(b) of the Federal Rules of Civil Procedure were complied with, and that (5) since no monetary award was made to any of those named as defendants, one finding denying all of the defendants a recovery would be in full compliance with the requirement of making a separate award and valuation in the premises with respect to each separate parcel involved and

that to do otherwise would be wholly repetitious.

■■■ The condemnation of property under the TVA Act is governed by Rule 71A of the Federal Rules of Civil Procedure, and section 25 of the TVA Act. It is the district court and not a three-judge court that has jurisdiction of such cases. The district court appoints commissioners, signs orders of possession, permits amendments as necessary, signs judgments, and takes whatever action may be necessary. The three-judge court has a very limited function. It is a specially constituted tribunal whose only function is to pass on the value of the property taken when that issue has been properly presented to it for consideration (Fed.R.Civ.P. 71A(h); TVA Act § 25). The three-judge district court provided for in the TVA Act is a special statutory court and, as such, its jurisdiction is strictly limited to the powers conferred upon it by Congress. Cf. American Federation of Labor v. Watson, D.C. S.D.Fla.1945, 60 F.Supp. 1010, reversed on other grounds 1946, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873; Phillips v. United States, 1941, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800; Bowers v. Calkins, D.C.D.N.H.1949, 84 F.Supp. 272.

"A district court of the United States is vested with power to dismiss an action for failure * * * to prosecute it with reasonable diligence. The power is inherent and independent of any statute or rule. And where plaintiff has failed to prosecute the action with reasonable diligence, the court may dismiss it on motion of the defendant or on its own motion." Shotkin v. Westinghouse Electric & Mfg. Co., 10 Cir., 1948, 169 F.2d 825, 826; Hicks v. Bekins Moving & Storage Co., 9 Cir., 1940, 115 F.2d 406. Rule 41(b) Federal Rules of Civil Procedure.

■■■ Defendant is in no position to complain that she has not had her day in court, for "the right to a day in court means not the actual presentation of the case, but the right to be duly cited to appear and to be afforded an opportunity to be heard". Olsen v. Muskegon Piston Ring Co., 6 Cir., 117 F.2d 163, 165. She

had her day before the Commissioners. It was because of her own dereliction that she did not thereafter avail herself of her statutory right to be heard before a court of three judges on her exceptions.

Further she is estopped by failing to perfect her appeal and to secure the transcript of the evidence heard before the Commission prior to its being destroyed.

Again she is clearly estopped by the action of her counsel when they agreed in substance that a three-judge court would be waived and a single judge could thereupon determine the controversy,—and the exchange of letters in this regard certainly would appear adequate to constitute the required stipulation in writing as is contemplated by the TVA Act. Bank of America Nat. Trust & Sav. Ass'n v. Superior Court of San Francisco, 1941, 47 Cal.App.2d 359, 117 P.2d 932.

The general proposition of estoppel is stated in 31 C.J.S. Estoppel § 118 as follows:

"A party who has taken a position with regard to procedure, which has been acted or relied on by his adversary or by the court, is estopped from taking an inconsistent position respecting the same matter, in the same proceeding, to his adversary's prejudice".

And finally—

A motion to vacate a judgment under Rule 60(b) of the Federal Rules of Civil Procedure cannot be used to obtain reconsideration of matters already passed on by the court. Von Wedel v. McGrath, D.C.D.N.J.1951, 100 F.Supp. 434; Gilmore v. Hinman, 1951, 89 U.S.App. D.C. 165, 191 F.2d 652; Morse-Starret Products Co. v. Steccone, 9 Cir., 1953, 205 F.2d 244. Relief in such case would have to be obtained by a motion for a new trial, or by appeal; neither of which is now available to the defendant.

I Conclude Therefore, that this court had jurisdiction to enter the judgment of September 2, 1960, dismissing the exceptions of the defendant, and affirming the Report of the Special Master and the Report and Award of the Commission, in accordance with Rule 41(b) of the Federal Rules of Civil Procedure, and—

That the plaintiff's motion to strike the petition is granted and the motion to set aside and vacate the judgment is denied.

Counsel will prepare decree.